## Kemmerer *versus* Tool *et al.*

1. One owning land subject to a lien purchased other land before the lien expired, and agreed, by amicable sci. fa., to revive the lien so as to bind the after-acquired land. Within four months he was declared bankrupt. *Held*, that the agreement was not in fraud of the bankrupt law.

2. The circumstance that a debtor consents to do what was for his own advantage would not affect the creditor with knowledge of insolvency, which from other facts he had no reasonable cause to believe.

3. The bankrupt's real estate was sold by the sheriff, who paid the judgment-creditor in the revived judgment. *Held*, that the Court of Common Pleas had jurisdiction to entertain a suit by the assignees in bankruptcy for the recovery of the money so paid, if the judgment had been in fraud of the bankrupt law.

March 17th 1876. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON, and WOODWARD, JJ.

Error to the Court of Common Pleas of *Lehigh county :* Of January Term 1875, No. 75.

This was an action of assumpsit, brought July 6th 1872, by James I. Tool and Charles W. Romich, assignees in bankruptcy of E. H. Knerr, against Martin Kemmerer. The action was brought to recover the amount received by the defendant from the

[Kemmerer *v.* Tool.]

proceeds of a judgment obtained by him against the bankrupt within four months of the commencement of the proceedings in bankruptcy; the plaintiffs alleging that the judgment was in fraud of the bankrupt law, as having been confessed when the bankrupt was insolvent, or in contemplation of insolvency, and the defendant having had reasonable cause to believe that the bankrupt was insolvent.

The case was tried September 17th 1874, before Longaker, P. J.

The plaintiffs, under objection and exception, gave in evidence the record of proceedings in bankruptcy, under which, on the 22d of June 1870, Knerr was declared a bankrupt.

Also, under objection and exception, the record of a judgment, Martin Kemmerer against Edward H. Knerr, entered April 3d 1868, for $4000.

They gave evidence that at the time of entering this judgment, the defendant owned a considerable quantity of real estate, amongst the rest, real estate in the First ward and other parts of the city of Allentown, and a body of ore land. On the 30th of May 1868, Knerr sold his ore land, and Kemmerer released this land from the lien of his judgment; and in the same year he sold his real estate in the First ward, Allentown; from the purchase-money he paid $1350 on the judgment, and Kemmerer released this property from its lien. In 1869 Knerr bought other real estate, called the Marx farm. Afterwards, Kemmerer, in order to obtain a lien on the Marx farm, took to Knerr an agreement, dated May 16th 1870, for an amicable scire facias for the revival of the lien of his judgment. Knerr signed the agreement; it was filed in the prothonotary's office, and judgment entered upon it, May 17th 1870, a few days before the commencement of the proceedings in bankruptcy. To October Term 1870, an execution was issued against Knerr; under it the Marx farm was sold for $6300, and on the 8th of November 1870, Kemmerer received from the sheriff, out of the proceeds, the sum of $2583.27, in full of debt, interest and costs on his judgment.

There was much evidence as to Knerr's insolvency, and as to whether Kemmerer knew or had reasonable cause to believe that Knerr was insolvent when he executed the agreement to revive the judgment so as to make it a lien on the Marx farm. There was no evidence that Kemmerer had made inquiry as to Knerr's solvency.

The following were points of the defendants:—

" 1. This court has no jurisdiction in determining the validity of the payment of the money by the sheriff to the defendant, and the assignees of Knerr cannot recover it back in this action.

" 2. The assignees of Knerr should have claimed the fund from the sheriff or brought the same into court for distribution, and

[Kemmerer *v.* Tool.]

their allowing the money to be paid to the creditors, estops them from claiming it now.

" 3. The fund having been distributed and paid by the sheriff to the creditors of Knerr, it cannot now be recovered back."

These points were refused.

The court charged :—

* * * " Knerr must have been insolvent, or was contemplating insolvency. Insolvency under the Bankrupt Act is not a total inability by Knerr to pay his liabilities for want of assets, but it is that condition financially when he is unable to pay his notes and other liabilities generally as they fall due. A failure to meet a note or two, or other indebtedness when due or demanded, is not enough if payment be made within a reasonable time thereafter, but if there be a general failure to pay, then the condition of the law is satisfied, and insolvency has occurred, or the debtor may be said to be acting in contemplation of insolvency. A man being a trader may have property sufficient to pay all his debts, and yet, if there be a general failure to pay when due, he will, by the provisions of the Bankrupt Act, be insolvent, or acting in contemplation of insolvency. Insolvency is a question of fact and is not founded upon the actual knowledge of the debtor and creditor, a reasonable cause to induce belief is all that is required.

" Under these instructions you will inquire whether or not, on May 17th 1870, when the agreement to revive the judgment was given : Knerr was insolvent or contemplating insolvency. * * *

" You will then recur to the inquiry at the time of the revival, was Knerr insolvent, or contemplating insolvency ? You will, if found in the affirmative, have established the first requisite, and you will next inquire for the second condition, viz.: was the revival given with a view to prefer the defendant over the other creditors ? This condition is satisfied if the object of the revival was to extend the lien of the judgment upon after-acquired property ; by operation of law the effect of the revival was to extend the lien on the after-acquired property, and there being after-acquired real estate proven, it may safely be found as a fact that the revival was given with a view to prefer the defendant over the other creditors.

" If you find the first and second requisites established as facts, you will inquire for the third requisite, namely : that the defendant at the time of the revival had reasonable cause to believe that Knerr was insolvent, or was contemplating insolvency. [Reasonable cause to believe, is that condition of mind produced from facts and circumstances which would put a prudent and careful man upon inquiry, as to the solvency or insolvency of Knerr ; it is a well-founded suspicion, based upon facts from which such suspicion will reasonably flow, it is a state of mind produced from facts less than actual knowledge, or less than a full conviction of the actual

[Kemmerer *v.* Tool.]

fact.   Reasonable cause will also be presumed under a certain condition of facts.   It is a fact that the debt sought to be secured by the revival was not created at that time, but was subsisting since January 1868, and whenever the debt is thus subsisting and a revival is taken merely to extend the lien thereof, it is an act done out of the usual course of business, and being so done, it was the duty of the defendant to make an inquiry as to the solvency or insolvency of Knerr, and on failure so to make the inquiry, the presumption follows that the defendant would have found reasonable cause to induce the belief that Knerr was insolvent or was contemplating insolvency.   There being no evidence that such inquiry was made, you are instructed that this requisite has been established.]

" And, fourthly, was the act of revival intended to be a fraud upon the Bankrupt Act?   This intent may be inferred from the legal effect of the act done.   The legal effect of the revival was to give this preference, and this effect the debtor and the defendant were bound to know, and the revival and the extension of the lien of the judgment having occurred, the presumption follows that a fraud upon the Bankrupt Act was intended.   This legal presumption, however, may be overcome, if from the evidence and all the surrounding circumstances of the case, you are satisfied that the condition of Knerr was not that of insolvency, or that he was not acting in contemplation of insolvency." * * *

The verdict was for the plaintiffs, for $3182.15.

The plaintiffs took a writ of error, and assigned for error, amongst others:—

The answers to their points above given, and the part of the charge in brackets.

*C. J. Erdman* and *J. D. Stiles*, for plaintiffs in error.—The money having been paid by the sheriff to Kemmerer, the Court of Common Pleas had not jurisdiction in this case, as it would have had if the assignees had claimed in a distribution by the court: Biddle's Appeal, 18 P. F. Smith 13; Rohrer's Appeal, 12 Id. 498; Campbell's Case, 1 Lead. Cas. in Bank. 30; Miller *v.* O'Brien, 9 Blatch. 270.   If an insolvent debtor believes he will be able to continue his business, and pays a just debt without a design to give a preference, the payment is not fraudulent, although bankruptcy should follow : Gregg's Case, 4 Bank. R. 150; Bachman *v.* Smith, 16 Wallace 277; Wilson *v.* Bank, 17 Id. 473. Whether a creditor has reasonable cause to believe the debtor insolvent is for the jury; Foster *v.* Hackley, 2 Lead. Cas. in Bank. 8; Dorr *v.* Sargeant, 15 N. H. 115; Phœnix *v.* Ingraham, 5 Johns. R. 412; Casteel *v.* Booker, 2 Exch. 691; Buckingham *v.* McLean, 13 Howard 151.

[Kemmerer v. Tool.]

*R. E. Wright, Jr.* (with whom was *E. A. Wright*), for defendants in error.—As to jurisdiction, cited, Holl *v.* Dreshler, 21 P. F. Smith 300; Biddle's Appeal; Rohrer's Appeal, *supra;* Trader's Bank *v.* Campbell, 6 Bank. R. 353; Cook *v.* Whipple, 5 N. Y. 150; Cook *v.* Waters, 9 Bank. R. 155. As to the effect of the agreement to revive the lien: Trader's Bank *v.* Campbell, *supra.*

Mr. Justice SHARSWOOD delivered the opinion of the court, May 10th 1875.

The errors assigned to the charge of the court, except the third, may be dismissed with the general remark that they are not sustained. We have no doubt of the jurisdiction of a state court to entertain such an action, and although in an ordinary case it may be doubted whether a bonâ fide creditor who has received from a sheriff the amount of his claim and may in good conscience retain it, though the payment to him was by mistake, can be compelled by an action to refund, yet in this particular class of cases that question is precluded by the express provision of the thirty-fifth section of the Bankrupt Act that "the assignee may recover the property, or the value of it, from the person so receiving it or so to be benefited," in contravention of the enactment as to fraudulent preferences.

We think, however, that there was error in so much of the charge excepted to as instructed the jury that when a subsisting debt is secured by judgment, and "a revival is taken merely to extend the lien thereof, it is an act done out of the usual course of business, and being so done, it was the duty of the defendant to make an inquiry as to the solvency or insolvency of Knerr, and on failure to make the inquiry, the presumption follows, that the defendant would have found reasonable cause to induce the belief that Knerr was insolvent or was contemplating insolvency. There being no evidence that such inquiry was made, you are instructed that this requisite has been established," namely, that the defendant, Kemmerer, had reasonable cause to believe that Knerr was insolvent.

That the learned judge was supported by some of the bankrupt decisions in the Federal courts, prior to the determination of the Supreme Court of the United States, in Wilson *v.* City Bank, 17 Wallace 473, must be conceded. But the Supreme Court in that case gave a more liberal and reasonable construction of the Bankrupt Act in support of the rights of bonâ fide creditors. It was held, that something more than passive non-resistance of an insolvent debtor to regular judicial proceedings, in which a judgment and levy on his property are obtained, when the debt is due, and he is without just defence to the action, is necessary to show a preference of a creditor, or a purpose to defeat or delay the operation of the Bankrupt Act; that though the judgment-

creditor in such case may know the insolvent condition of the debtor, his levy and seizure are not void under the circumstances, nor any violation of the Bankrupt Law; and that a lien thus obtained by him, though within four months of the filing of the petition, will not be displaced by subsequent proceedings in bankruptcy against the debtor.

We must assume in this argument that Kemmerer had no knowledge of Knerr's insolvency, and no reasonable cause to believe it, unless in the bare fact that Knerr, on his, Kemmerer's, application, was willing to consent to a revival of his judgment, so that it might be a lien on real estate acquired by Knerr subsequent to its date. What was there in this to excite Kemmerer's suspicion, or put him on inquiry? Is it out of the usual course of business for a judgment-creditor, the lien of whose judgment is about to expire, to say to his debtor, "I do not wish to put you to any unnecessary costs by adverse process; give me an amicable revival?" It may be said to be almost an everyday thing. The advantage is all on the side of the debtor, not of the creditor. Kemmerer might at once have sued out an execution, made a levy on the after-acquired real estate, and then secured the lien which he was desirous of obtaining.

Surely, the mere circumstance that the debtor consented to do a thing which in any aspect was for his own benefit, should not be allowed to affect the creditor with knowledge of insolvency, which from no other facts he had any reasonable cause to believe, yet the charge of the learned judge certainly went this far.

Judgment reversed, and *venire facias de novo* awarded.